IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA )
)
v. )
) Criminal No. 3:10CR170–HEH
JACK ROSGA, *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION

This matter comes before the Court on two sets of petitions by non-defendant third parties to amend numerous forfeiture orders previously entered in this case, as well as motions by the United States to strike those petitions. For the reasons set forth herein, the third-party petitions will be denied, and the Government's motions will be granted.

### I. BACKGROUND

#### A. The Underlying Orders of Forfeiture

On June 10, 2010, the Grand Jury returned an Indictment charging twenty-seven members and affiliates of the American Outlaws Association ("AOA") and Outlaws Motorcycle Club ("OMC") with crimes pertaining to their participation in an organized criminal enterprise. Pursuant to Federal Rule of Criminal Procedure 32.2, the Indictment provided all of the defendants with the following notice:

> [T]he United States will seek forfeiture as part of any sentence, in accordance with Title 18, United States Code, Section 1963, in the event of any defendant's conviction under Count One of this Indictment[,] ... [of] property ... constituting and derived from proceeds obtained, directly [or] indirectly, from racketeering activity, ... [in which the defendant has]

acquired and maintained [an] interest[].[1]

(ECF No. 3 at 47-50.) After two separate trials, all but six of the defendants were found guilty of racketeering-related offenses, and sixteen were convicted of Conspiracy to Violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") in violation of 18 U.S.C. § 1962(d).

"RICO provides for drastic remedies," including the "forfeiture of illegal proceeds" and any property which gave the defendant influence over the criminal enterprise. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 233 (1989); 18 U.S.C. § 1963(a); *see generally United States v. Martin*, 662 F.3d 301, 306 (4th Cir. 2011) ("Criminal forfeiture is part of a defendant's sentence."). As the Fourth Circuit has observed, the RICO statute contains what is "by far the most far reaching forfeiture provision, sweeping far more broadly than the substantive RICO offense itself." *United States v. Cherry*, 330 F.3d 658, 669 n.18 (4th Cir. 2003) (internal quotation marks and citation omitted). Upon their convictions in this case, several of the defendants entered into forfeiture agreements with the United States.

Finding the "requisite nexus between the property" identified in the agreements and the respective defendant's crime(s) of conviction, and concluding "that the defendant ha[d] an interest in" the subject property, this Court approved and entered the consent orders of forfeiture now in dispute. (*See, e.g.*, ECF No. 821.) Of particular relevance to the immediate matter, the Court directed the forfeiture of, among other things:

---

[1] On September 15, 2010, the Government filed a Superseding Indictment containing an identical forfeiture allegation. (ECF No. 385, at 46-48.)

> All indicia or 'colors' associated with the American Outlaws Association or a rival organized motorcycle club, to include vests; jackets; t-shirts; clothing accessories; patches; banners; flags; and signs; recovered from [the defendant's residence or regional clubhouse].

(*E.g.*, *id.*) For example, the Court ordered the forfeiture to the United States of specified property seized from defendant Jack Rosga's residence, as well as an AOA clubhouse, both located in Milwaukee, Wisconsin. (*Id.* at 1-2.) The Court also approved the forfeiture of property recovered from defendants' homes and clubhouses in Virginia, North Carolina, South Carolina, Montana, and Maine.

Following this Court's entry of preliminary orders of forfeiture, the Government provided public notice on an official government website—www.forfeiture.gov—of the pending forfeiture actions and its intent to dispose of the seized assets. (*See, e.g.*, ECF No. 912.) As to defendant Rosga, for instance, forfeiture notices were posted online from May 13 until June 11, 2011, and again from September 1 until September 30, 2011. (Eads Aff. 1, ECF Nos. 912-1, 955-1.) The United States also represented to the Court that it had "notified all third parties of their right to petition the Court ... to adjudicate the validity of their legal interest in the property." (ECF No. 912.) After 30 days from the last date of publication, this Court's orders of forfeiture became final.

**B.     Petitioners' Challenges to the Forfeiture of OMC "Indicia" or "Colors"**

Kevin O'Neill ("O'Neill"), Steve Kaczmarek ("Kaczmarek"), Lawrence Barboza ("Barboza"), and Peter Gross ("Gross") (collectively, "Petitioners") are AOA and OMC members who were not named as defendants in this case. Asserting two separate clusters of claims, Petitioners move this Court to amend its previous forfeiture orders pursuant to

18 U.S.C. § 1963(l). The first set, which includes petitions by O'Neill, Kaczmarek, and Gross, contests the Court's April 8, 2011 Consent Order of Forfeiture as to defendant Jack Rosga.[2] The second set of petitions, filed by O'Neill and Barboza, challenges ten additional agreed orders of forfeiture in this action.[3] In short, Petitioners[4] seek "the return of all indicia and other property associated with the Outlaws Motorcycle Club ... and the American Outlaws Association" subject to forfeiture. (First O'Neill Pet. 1; Second O'Neill Pet. 1.)

Petitioners advance two arguments in support of their claims. First, they maintain

---

[2] The first of these motions, Kevin O'Neill's Verified Petition to Amend Consent Order of Forfeiture (ECF No. 932) (hereinafter the "First O'Neill Petition"), was filed on October 3, 2011. On the same date, Kaczmarek filed a Declaration in Support of O'Neill's Petition. (ECF No. 933.) In addition to endorsing O'Neill's claims, Kaczmarek asks that his motion be construed as an alternative request to amend the Court's underlying order of forfeiture. (*See id.* at ¶ 12 ("In the alternative to Mr. O'Neill's Petition, I am requesting the Court to accept this Declaration as a petition to amend the Consent Order of Forfeiture ... claiming ALL OMC indicia seized from the Clubhouse.").) Likewise, both Gross and Kazcmarek filed Motions to Adopt the Filings of Kevin O'Neill Pursuant to Fed. R. Civ. P. 10(c) on January 18 and 23, 2012, respectively (ECF Nos. 971-72), integrating O'Neill's factual and legal contentions and asserting independent grounds for amendment of the forfeiture order as to defendant Rosga.

[3] On October 31, 2011, O'Neill filed an Omnibus Verified Petition to Amend Consent Orders of Forfeiture (ECF No. 954) (hereinafter the "Second O'Neill Petition"), contesting the orders entered as to defendants Leslie Werth (ECF No. 563), John Banthem (ECF No. 607), David Lowry (ECF No. 705), Michael Smith (ECF No. 717), Thomas Benvie (ECF No. 749), Mark Steven Fiel (ECF No. 751), Brett Longendyke (ECF No. 762), Michael Mariaca (ECF No. 782), Christopher Timbers (ECF No. 829), and Mark Jason Fiel (ECF No. 833). Barboza, who identifies himself as "the 'Responding Secretary' for the OMC Inc., and also a spokesman for the Brockton Massachusetts Chapter of the OMC," filed Declarations in Support of O'Neill's Second Petition on October 31 and November 28, 2011. (ECF Nos. 954-1, 962.) Barboza asserts that "[w]ith the exception of the indicia seized on June 15, 2010 from the OMC Clubhouse in Milwaukee, and in the alternative to any claim of [O'Neill], this declaration is a petition to amend any Consent Orders of Forfeiture ..., for the return of ALL OMC indicia forfeited within those orders." (*Id.* ¶ 12.) The Court thus construes Barboza's Declarations as distinct petitions challenging all agreed forfeitures of OMC or AOA "indicia" in this case.

[4] Because Kaczmarek, Gross, and Barboza expressly adopt O'Neill's allegations and arguments, the Court will evaluate their claims separately only to the extent that meaningful distinctions can be drawn.

4

that the Government failed to give statutorily and constitutionally adequate notice of the pending forfeitures. And second, they assert that none of the defendants in this matter *owned* the AOA and OMC indicia disposed of in their respective consent orders, such that the defendants lacked the power lawfully to agree to the forfeiture of that property.

In response, the Government contends that it complied with its constitutional and statutory duty to provide public notice of the forfeiture actions in question. The Government further argues that the vast majority of Petitioners' claims are time-barred. Finally, the Government asserts that, in any event, Petitioners lack standing to proceed on their claims. Petitioners have all replied, and the matter is now ripe for decision.[5]

## II. LEGAL STANDARD

Title 18 U.S.C. § 1963(l) provides an ancillary process "through which a third party may protect his interest in property that has been subject to a forfeiture order." *United States v. McHan*, 345 F.3d 262, 269 (4th Cir. 2003). After the entry of a forfeiture order, § 1963 requires the United States to "publish notice of the order and of its intent to dispose of the property." 18 U.S.C. § 1963(l)(1). Additionally, "[t]he Government may ..., to the extent practicable, provide direct written notice to any person known to have alleged an interest in the property that is the subject of the order of forfeiture as a substitute for published notice as to those persons so notified." *Id.* The

---

[5] Although it is not directly relevant to the immediate analysis, the United States avers that "the large majority" of the property at issue—that is, the "indicia" and "colors" of the AOA and OMC—is not in fact being forfeited as part of the criminal case. The Government further asserts that the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") "has begun the process of returning all property seized as evidence that is not being forfeited or maintained for the ... appeals" in this matter currently pending before the U.S. Court of Appeals for the Fourth Circuit. (Gov't Mot. Strike Barboza Pet. 2.)

Federal Rules of Criminal Procedure similarly provide that, "[i]f the court orders the forfeiture of specific property, the government must publish notice of the order and send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding." Fed. R. Crim. P. 32.2(b)(6)(A). The Government may satisfy its publication duty through any of the methods set forth in Supplemental Rule G(4)(a)(iv) of the Federal Rules of Civil Procedure, including by "posting notice on an official internet government forfeiture site for at least 30 consecutive days." Fed. R. Civ. P. G(4)(a)(iv)(C).

Within 30 days of receiving notice, "[a]ny person, other than the defendant, asserting a legal interest" in the property may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property." *Id.* § 1963(l)(2). The petition must be signed and must set forth the nature and extent of the petitioner's interest in the property. *Id.* § 1963(l)(3). "[T]o the extent practicable and consistent with the interests of justice," the court is directed to hold a hearing "within thirty days of the filing of the petition," at which the petitioner and the United States may present witnesses and other evidence. *Id.* § 1963(l)(4). Ultimately, the claimant must demonstrate by a preponderance of the evidence that he

> has a legal right, title, or interest in the property, and such right, title, or interest renders the order of forfeiture invalid in whole or in part because the right, title, or interest was vested in the petitioner rather than the defendant or was superior to any right, title, or interest of the defendant at the time of the commission of the acts which gave rise to the forfeiture of the property under this section.

*Id.* § 1963(l)(6)(A). Upon such a showing, the court must amend the forfeiture order to account for the petitioner's property interest. *Id.*

In analyzing a petition pursuant to § 1963(l), the court must first, as a threshold issue, determine whether the petitioner has the requisite standing to assert his claim. A court may "dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." Fed. R. Crim. P. 32.2(c)(1)(A). In considering standing, however, "the facts set forth in the petition are assumed to be true." *Id.* To establish statutory standing, a petitioner has the burden of showing a present legal interest in the specific property subject to forfeiture. 18 U.S.C. § 1963(l)(2); *see United States v. Schecter*, 251 F.3d 490, 495 (4th Cir. 2001).

## III. ANALYSIS

### A. Adequacy of the Government's Published and Direct Notice

As an initial matter, Petitioners' challenge to the sufficiency of the Government's notice of forfeiture is without merit. Under the § 1963 and Rule 32.2 framework, the United States must provide (1) published notice to the general public, and (2) individualized notice to potential claimants, if any, who reasonably appear to have an ownership interest in the property at issue. Those obligations were satisfied here. First, following the Court's entry of forfeiture orders in this case, the United States fulfilled its duty to provide public notice by posting a description of the property and other pertinent information on an official government website for a period of 30 days. As evidence of its compliance, the Government filed a Notice of Publication and Finality of Consent Orders of Forfeiture as to each of the forfeitures at issue, describing the assets to be forfeited, the means of notice employed, and the duration of publication. (*See* ECF Nos. 912 (Rosga), 955 (Rosga), 987 (Werth), 931 (Banthem), 913 (Lowry), 915 (Smith), 911 (Benvie), 898

(M.S. Fiel), 914 (Longendyke), 896 (Mariaca), 926 (Timbers), & 917 (M.J. Fiel).)

Second, neither O'Neill nor any other Petitioner was entitled to individualized notice under Rule 32.2. "As [§ 1963(l)] makes clear, while notice through publication is required, written notice to *specific* persons known to have an interest is permissive." *United States v. Phillips*, 185 F.3d 183, 186-87 (4th Cir. 1999) (emphasis added) (discussing identical language in 21 U.S.C. § 853(n)(1)).[6] O'Neill argues, however, that because he had previously filed a motion seeking the return of property seized during the investigation of this case, which this Court denied, the Government should have been aware of his potential claim to the subject property. Yet as established in the Court's June 2011 Memorandum Order denying O'Neill's motion, O'Neill did not have any apparent cognizable legal interest in the seized property at the time of forfeiture. (*See* ECF No. 890.) Since neither O'Neill nor his fellow Petitioners "reasonably appear[ed] to be ... potential claimant[s] *with standing to contest* the forfeiture," Fed. R. Crim. P. 32.2(b)(6)(A) (emphasis added), the Government was not required specifically to advise them of the pending forfeitures, and cannot be faulted for electing not to do so.

Further, even if the Government erred in failing to contact them directly, the participation of O'Neill and Kaczmarek in this case since early 2011 indicates that (at least these) Petitioners had "actual notice" of the proceedings. "A potential claimant who

---

[6] Given the substantial similarities between the drug forfeiture statute, 21 U.S.C. § 853, and the RICO forfeiture statute, 18 U.S.C. § 1963, courts generally "refer to the cases discussing the two statutes interchangeably." *United States v. Ribadeneira*, 105 F.3d 833, 835 (2d Cir. 1997); *see also McHan*, 345 F.3d at 267 (observing that § 853 "is, in nearly all respects, identical to the RICO criminal forfeiture statute as amended"); *United States v. McKinney*, 915 F.2d 916, 921 (4th Cir. 1990) ("[T]he drug and RICO forfeiture statutes should be similarly construed."). This Court, too, will incorporate into its analysis case law relating to both statutes.

had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." Fed. R. Civ. P. G(4)(b)(iii)(A)-(v). In this case, O'Neill filed his motion for the return of seized property on April 12, 2011 (ECF No. 836)—several months prior to the entry of the orders in dispute—and Kaczmarek contemporaneously filed a Declaration in support thereof (ECF No. 838). Their attempt at this juncture to "oppose or seek relief from the forfeiture because of the government's failure to send the required notice" is therefore misguided. *Id.* And since Petitioners did not have an ostensible interest in the property being forfeited, their constitutional challenges must also fail. *See Dusenbery v. United States*, 534 U.S. 161, 167-71 (2002) (explaining that the Due Process Clause requires the Government in a forfeiture action to use means "reasonably calculated to apprise" those "individuals *whose property interests are at stake*") (emphasis added) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). Consequently, this Court concludes that Petitioners received all the notice to which they were entitled.

## B. Timeliness of Petitioners' Claims

Any person wishing to assert an interest in forfeited property must file their claim within 30 days of the earlier of his actual receipt of notice or the government's final publication of notice. 18 U.S.C. § 1963(l)(2). This rule is "mandatory," such that a third party who does not file a petition "within the prescribed thirty days ... forfeits [his or] her interest in the property." *United States v. Marion*, 562 F.3d 1330, 1336-37 (11th Cir. 2009); *see also United States v. Grossman*, 501 F.3d 846, 848-49 (7th Cir. 2007); Fed. R. Crim. P. 32.2 advisory committee notes (2000) ("[I]f a third party has notice of the

forfeiture but fails to file a timely claim, his or her interests are extinguished, and may not be recognized when the court enters the final order of forfeiture.").

The United States published its initial online notice of the forfeiture proceedings against defendant Rosga beginning on May 13, 2011. This notification "provided a detailed description of most of the items forfeited" pursuant to this Court's order, including some of the AOA and OMC "indicia or colors" seized from Rosga's residence. (Gov't Opp'n to First O'Neill Pet. at 3.) Consequently, the deadline for filing third-party claims as to this subset of assets was July 12, 2011. The Government then published an additional set of seized items, which were subject to the same forfeiture order, starting on September 1, 2011. The cut-off for asserting ancillary claims as to this second subset of property was October 31, 2011. Because O'Neill and Kaczmarek did not file their petitions in this Court until October 3, 2011, however, their claims as to any property contained in the earlier (May 13, 2011) publication are barred. Gross's petition, filed on January 18, 2012, was also untimely.

As to defendants Werth, Banthem, Lowry, Smith, Benvie, M.S. Fiel, Longendyke, and Mariaca, the Government published notice of the respective forfeiture actions beginning on May 13, 2011. Thus, the deadline for filing ancillary claims to property forfeited by these defendants was July 12, 2011. The Government also published notice as to defendants Timbers and M.J. Fiel beginning on July 26, 2011, making any third-party challenges due on September 24, 2011. Yet both O'Neill and Barboza delayed until October 31, 2011—more than 30 days beyond the applicable deadline—in submitting their petitions to amend this Court's underlying orders.

In sum, only O'Neill's and Kaczmarek's claims to property contained in the later (September 1, 2011) Rosga publication were timely filed. All other petitions in this case are time-barred, and any interests asserted therein have been forfeited. *See* 18 U.S.C. § 1963(l)(7) ("[I]f no ... petitions are filed following the expiration of the period provided in [§ 1963(l)(2)] for the filing of such petitions, the United States shall have clear title to property that is the subject of the order of forfeiture.").

## C. Petitioners' Standing to Contest the Forfeiture Orders

Alternatively, the Government contends that even if Petitioners had lodged their claims prior to the expiration of the statutory filing period, none of them has standing to proceed in this matter. In response, Petitioners argue that they have standing to contest the forfeiture of purportedly communal OMC property by virtue of their superior positions within the organization.[7] This Court agrees with the Government.

---

[7] In support of Petitioners' argument, O'Neill asks this Court to take "judicial notice" of a recent decision of the U.S. District Court for the Central District of California, *Rivera v. Carter*, No. 2:09cv2435-FMC-VBKx (C.D. Cal. July 31, 2009). (ECF No. 975-1.) As an initial matter, federal district courts generally do not take judicial notice of the analysis and reasoning set forth in another court's opinion. Rather, Federal Rule of Evidence 201 allows the court to "judicially notice a *fact* that is not subject to reasonable dispute." Fed. R. Evid. 201(b) (emphasis added). Thus, for example, a court may "notic[e] the content of court records," *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989), but "only for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation." *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994). O'Neill's motion will therefore be denied.

Regardless, the district court's opinion in *Rivera* is inapposite to the dispute at bar. In that case, the United States sought the forfeiture of the registered "trademark or service mark" of the Mongols Motorcycle Club as part of its RICO prosecution against several Mongols members. (ECF No. 975-1 at 2.) In addition to seizing items bearing Mongols indicia from named defendants, however, ATF agents also "seized items bearing or displaying the trademark from persons not charged" in the indictment. (*Id.* at 3.) In granting the motion of plaintiff Ramon Rivera, a non-defendant member of the Mongols Club, to preliminarily enjoin "the Government from seizing items of personal property for the sole reason that they bear the collective membership mark at issue," the court held that the United States could seek the forfeiture only of property in which a named defendant had an interest. (*Id.* at 4, 9-10 (observing that "RICO

Under § 1963 and Rule 32.2, "a party seeking to challenge the government's forfeiture of money or property ... must first demonstrate a legal interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture."[8] *United States v. Timley*, 507 F.3d 1125, 1129 (8th Cir. 2007); *see also United States v. Oregon*, 671 F.3d 484, 490 (4th Cir. 2012) ("[T]he touchstone for standing is the possession of a legal interest in the forfeited property."); *United States v. Reckmeyer*, 836 F.2d 200, 205-06 (4th Cir. 1987) ("[S]tanding to challenge the forfeiture of a defendant's assets ... requires ... a showing of a legal interest ... in the property subject to forfeiture."). Although the claimant need not prove the merits of his underlying claim, he must establish at least a "facially colorable ownership interest" in the property in question.[9] *United States v. One 18th Century Colombian Monstrance*, 802 F.2d 837, 838 (5th Cir. 1986); *see also United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497-98 (6th Cir. 1998). The term "legal interest," as it is used in the statute, encompasses only "legally protected rights,

---

forfeiture is an *in personam* action rather than an *in rem* action").) Thus, the government had exceeded the scope of its authority under § 1963 by "seek[ing] forfeiture of property belonging entirely to a third party non-defendant." (*Id.* at 11.)

Here, by contrast, the United States has sought only to forfeit property belonging to, and seized from the possession of, defendants convicted of RICO offenses. Moreover, the plaintiff in *Rivera* sought to *temporarily* enjoin the forfeiture of shared property *in advance* of trial, whereas the defendants from whom the items at issue were seized in this case have been convicted and have agreed to the forfeiture of their belongings. Indeed, the court in *Rivera* specifically remarked that the plaintiff in that case would plainly *lack* standing "to participate in any *post-*forfeiture ancillary proceeding because he claims no interest in the collective membership mark." (*Id.* at 5.) Thus, the district court's analysis in *Rivera* is not inconsistent with, and does not alter, this Court's conclusions in the immediate matter.

[8] Such statutory standing is distinct from Article III standing. As the Fourth Circuit recently reaffirmed, "[s]tatutory standing is itself a merits issue." *United States v. Oregon*, 671 F.3d 484, 490 n.6 (4th Cir. 2012).

[9] Section 1963(l) thus contemplates a two-tiered standard: § 1963(l)(2) requires "an initial showing of a 'legal interest' to obtain an ancillary hearing," and § 1963(l)(6) requires "a showing of a 'superior legal interest' to prevail at the hearing." *Timley*, 507 F.3d at 1130 n.2.

12

claims, titles, or shares in real or personal property"—not equitable rights. *Reckmeyer*, 836 F.2d at 205; *see also Timley*, 507 F.3d at 1129.

It is well established that, "[i]n an ancillary proceeding, a court may dismiss a third-party petition for lack of standing." *United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009) (citing Fed. R. Crim. P. 32.2(c)(1)(A)); *see, e.g.*, *United States v. French*, 822 F. Supp. 2d 615, 618 (E.D. Va. 2011). Where, as here, the Government moves to dismiss a petition prior to discovery or a hearing, the motion "should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." *Pacheco v. Serendesky*, 393 F.3d 348, 352 (2d Cir. 2004). Accordingly, this Court will dismiss the instant petitions only if the facts alleged, taken as true and viewed in the light most favorable to Petitioners, do not plausibly demonstrate a cognizable legal interest in the forfeited assets.

Here, the property in dispute presents a somewhat unique set of circumstances. Petitioners allege that AOA members frequently display the organization's logos and markings, such as on clothing, patches, banners, flags, and signs, "to symbolize unity and brotherhood," and to express the bearer's endorsement of "the ideology and purpose of the AOA." (Second O'Neill Pet. ¶¶ 11-12.) They further allege that no single member can "exclusively own the collective membership marks for the OMC and AOA." (*Id.* at ¶ 13.) Accordingly, inductees are advised that they may "surrender, transfer, or forfeit indicia of the AOA and OMC" only to fellow associates in good standing. (*Id.*) Certain members, however, including Petitioners O'Neill, Barboza, and Kaczmarek, are purportedly vested "with the authority from the collective ownership to protect, manage,

13

direct, oversee, or control all indicia of the OMC issued to the membership and maintained within the United States." (*Id.* at ¶¶ 16-17.) Specifically, O'Neill alleges that "since May 2, 2002, no OMC member [has held] a superior possessory interest or right, over that of Mr. O'Neill, to control, manage, direct, or oversee any and all property bearing the markings and indicia of the OMC, AOA, or Booze Runners Motorcycle Club." (First O'Neill Pet. at 2; Second O'Neill Pet. at ¶ 18.) Barboza, too, asserts that he, along with certain other unidentified members, enjoys "a superior right over that of any of the defendants in [this] case[] to manage, direct, oversee, or control indicia of the OMC." (Barboza Decls. ¶ 10, ECF Nos. 954-1 & 962.) Similarly, Kaczmarek claims to be one of the members authorized to "oversee[] or control OMC indicia" housed at the OMC Clubhouse in Milwaukee. (Kaczmarek Decl. ¶ 9, ECF No. 933; Kaczmarek Suppl. Decl. ¶ 6, ECF No. 988.) Petitioners argue that this special oversight constitutes a legal interest sufficient to contest the forfeitures of group indicia in this case.

In previously denying O'Neill's Rule 41(g) motion for the return of property for lack of standing,[10] this Court found identical assertions of collective ownership to be insufficient to demonstrate a cognizable interest in items seized as evidence.[11] (*See* ECF No. 890.) To establish standing under Rule 41(g), as under § 1963 and Rule 32.2, a claimant "must show that he has a colorable ownership or possessory interest" in the subject property. (*Id.* at 2 (quoting *Arevalo v. United States*, No. 05-110, 2011 U.S. Dist.

---

[10] Rule 41(g) allows "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property [to] move for the property's return." Fed. R. Crim. P. 41(g).

[11] The U.S. Court of Appeals for the Fourth Circuit affirmed this Court's decision in an unpublished opinion. *See United States v. O'Neill*, No. 11-6899, 2011 WL 5822183 (4th Cir. Nov. 18, 2011).

LEXIS 12311, at *13 (E.D. Pa. Feb. 8, 2011).) Because O'Neill did not claim "to have ever been in possession of the property at issue," and as he alleged "no more than unsupported legal conclusions that all AOA members have standing to seek the return ... for any indicia of the AOA," this Court found O'Neill's "bare assertion of collective ownership [to be] insufficient to confer standing." (*Id.* at 3.) The same rationale informs the Court's analysis today.

Aside from baldly claiming a superior right—relative to fellow members—to administer shared OMC and AOA property, Petitioners have not alleged any specific facts as to the actual extent of O'Neill's, Kacmarek's, or Barboza's "oversight" or whether any of these three Petitioners ever exercised his supposed right of control.[12] For example, Petitioners do not purport to have ever possessed, acquired, transferred, or ordered the disposition of, any particular OMC or AOA paraphernalia. In fact, O'Neill expressly acknowledges that the objects forfeited in this litigation were "previously in the

---

[12] Petitioners *do* expend substantial effort disputing whether the defendants in this case held a valid ownership interest in the seized property, since "[t]he defendants cannot agree to forfeit AOA indicia they do not own." (Second O'Neill Pet. at 8.) To that end, multiple defendants have submitted declarations averring that, contrary to the terms of their prior agreements with the United States, they do not possess, and have not possessed, "an ownership interest" in the AOA "indicia" and "colors" forfeited as part of their sentence. (*See, e.g.*, Rosga Decl. 1-2, ECF No. 963; Fiel Decl. 1-2, ECF No. 964; Werth Decl. 1-2, ECF No. 965.) In the same vein, Petitioners agree that "no individual member can exclusively own the collective membership marks of the OMC." (First O'Neill Pet. at 11; Barboza Decl. ¶¶ 9-10, ECF No. 954-1; Kaczmarek Decl. ¶ 9, ECF No. 933.) But the factual question of whether the *defendants* had sufficient property interests to justify their respective forfeitures is largely irrelevant to the threshold inquiry regarding *Petitioners'* standing to assert ancillary claims.

Interestingly, the Court also notes that O'Neill, Kaczmarek, and Barboza each profess to be "*one of* the members with the authority ... to oversee ... all indicia of the OMC." (Barboza Decl. ¶¶ 10-11, ECF 954-1 (emphasis added).) It is unclear how many other members share (or are excluded from) this same power. Regardless, without alleging any facts to substantiate their self-proclaimed authority, Petitioners have not satisfied the standing analysis.

actual possession of *other* OMC members." (ECF No. 932 at 14.) Instead, Petitioners merely recite the applicable legal standard. This Court need not, and does not, accept Petitioners' unadorned legal conclusions as true.

Significantly, the Fourth Circuit has recognized the need to construe the criminal forfeiture statutes "to deny relief to third parties acting as nominees of the defendant or who knowingly engage in sham or fraudulent transactions," so as to prevent "manipulation of ownership by persons engaged in criminal activity." *United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000). In this instance, the Government argues that the "collective ownership by virtue of membership" mechanism employed by the AOA is designed solely "to insulate from forfeiture property used by convicted members of the organization." (Gov't Resp. to Kaczmarek Pet. 6, ECF No. 979.) This characterization appears to be well founded. Indeed, O'Neill asserted in a previous filing with this Court that the AOA's property-sharing scheme gives "*all* AOA members ... standing to seek the return (or other available remedy) for *any* indicia of the AOA unreasonably retained, lost, or stolen by law enforcement." (ECF No. 873 at 3 (emphasis added).) He further explained that, under a "collective agreement/bylaw[,] ... when an OMC member makes no attempt to recover property with indicia of the OMC[] that was in his possession (or control) and seized by law enforcement, that member defers possessory interest to *any other member* filing an action to recover that ... property." (*Id.* (emphasis added).)

Convicted defendants in a racketeering or drug conspiracy case cannot avoid forfeiture merely by disclaiming their ownership interest in forfeited assets, with some other associate asserting that title to the property is jointly held by every member of the

16

group. Were the Court to countenance such claims, criminal organizations would simply label the proceeds of their unlawful activities as "shared," and thereby avoid forfeiture altogether. Congress clearly did not intend such an outcome. *See Morgan*, 224 F.3d at 343 ("The intent of Congress in enacting the forfeiture provisions of § 853 was to 'strip these offenders [racketeers and drug dealers] and organizations of their economic power.'") (alterations in original) (quoting S. Rep. No. 225, at 191 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3374). Mindful of the Fourth Circuit's concerns and Congress's objectives, this Court finds Petitioners' proclamations of "collective ownership" insufficient to confer standing under § 1963 and Rule 32.2.

In evaluating an ancillary claim to forfeited property, courts must "look beyond bare legal title" to determine whether the claimant exercises actual "dominion and control" over the property. *United States v. Morgan*, 224 F.3d 339, 343 (4th Cir. 2000); *see also In re Bryson*, 406 F.3d 284, 291 (4th Cir. 2005). Thus, where an individual is merely a nominal owner with "no power over the disposition" of the subject matter, his claim must fail. *Morgan*, 224 F.3d at 343-44 & n. 4. In this case, Petitioners' scant factual allegations prove, at most, that O'Neill, Kaczmarek, and Barboza possessed nominal authority over collectively held property bearing the AOA or OMC insignia. Without claiming to have ever possessed or actively controlled the property, however, and having failed to plead any facts substantiating their claims of unique dominion, Petitioners' allegations are insufficient to demonstrate a plausible "right, title, or interest" in the contested property. Accordingly, Petitioners lack standing, and their claims must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, this Court will grant the Government's motions to strike, and dismiss Petitioners' claims.

An appropriate Order will accompany this Memorandum Opinion.

/s/
Henry E. Hudson
United States District Judge

Date: May 21, 2012
Richmond, VA